UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
**KARRAR AL-YASERI,**                   )
                                        )
      **Plaintiff,**    )
                                        )
                                        )   Civil Action No.
      v.               )   13-11547-FDS
                                        )
**TMB BAKING a/k/a T M B BAKING,**      )
**INC. and M. BERTRAND PUMA d/b/a**     )
**MACHINES BERTRAND (Societe Des),**    )
                                        )
      **Defendants.**   )
                                        )
_____)

**MEMORANDUM AND ORDER ON DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**SAYLOR, J.**

This is a product liability action arising out of a workplace injury. Plaintiff Karrar Al-Yaseri alleges that he was injured while working as a baker at Traditional Breads, Inc. in Lynn, Massachusetts. Specifically, Al-Yaseri alleges that he was operating a "Euro 2000S" molding machine manufactured by defendant M. Bertrand Puma ("Machines Bertrand") and sold by defendant TMB Baking, Inc. ("TMB California") when the machine caught his right hand, crushing it.

TMB California has moved for summary judgment, contending that there is no evidence from which a reasonable jury could infer that it sold the machine that injured Al-Yaseri. For the following reasons, that motion will be granted.

**I.**     <u>**Background**</u>

Except where otherwise noted, the following facts are either undisputed or taken in the

light most favorable to Al-Yaseri as the non-moving party.

### A.     The Parties and Other Relevant Entities

Karrar Al-Yaseri is a resident of Lynn, Massachusetts. (Comp. ¶ 1). On July 12, 2010, he was working as a baker at Traditional Breads, Inc. That day, while he was operating a "Euro 2000S" molding machine, he sustained severe injuries to his right hand when it was caught and pulled into the machine. (Comp. ¶ 5).

The Euro 2000S was manufactured by the "Electrolux Entities," which is the parties' shorthand name for a group of associated French manufacturers. (Suas Dep. 16-22).[1] Electrolux uses the trademark "TMB BAKING A GLOBAL CONCEPT" to distribute and sell its baking machines in the United States. (Suas Dep. 25; Warwick Dep. 15).[2]

TMB Baking, Inc. ("TMB California") is a California corporation that distributes machines, products, and parts for the baking industry. (Suas Dep. 12-14). The original owner of TMB California was Michel Suas, who was the sole owner of TMB California's stock until he sold it in 2012 or 2013 to Gregory Warwick. (Suas Dep. 12, 18-19). TMB California does not manufacture its own machines. It sells only new machines manufactured by other companies, and does not sell used machines. (Suas Dep. 12-14, 55).

TMB California uses the same name ("TMB Baking"), logo, and marketing label as Electrolux (which actually manufactures the TMB Baking line of products). (Warwick Dep. 15-23). However, TMB California has different owners, officers, and employees than Electrolux, and is not a corporate subsidiary of any of the Electrolux entities. (Suas Dep. 29-30). TMB

---

[1] According to the parties, the Electrolux Entities include Electrolux Baking, Electrolux Baking Industries, Tibletti, and defendant Machines Bertrand.

[2] "TMB" is an acronym referring to "Tibletti" and "Machines Bertrand," which were two large European baking-machine manufacturers purchased by Electrolux. (Def. SMF ¶ 8).

California's only connection to Electrolux is its role as a non-exclusive distributor of Electrolux products in the United States.  (Suas Dep. 30).

In order to facilitate TMB California's sales of the Euro 2000S, Electrolux printed "cut sheets" containing information concerning the machine.  (Warwick Dep. 15-21).  Suas used the cut sheets in marketing the Euro 2000S in the United States, and they contained the address for TMB California in order to provide customers with a point of contact in the United States.  (Warwick Dep. 19).

### B. The Purchase of the Euro 2000S

Fitzroy Alexander is the owner of Traditional Breads.  According to Alexander, Traditional Breads purchased the Euro 2000S that injured Al-Yaseri in approximately 2001.  (Alexander Dep. 13-14).  Alexander testified that he bought the machine new.  (*Id.*).  He could not, however, identify the company that sold it to him.  (*Id.*).

Alexander testified that he "only" bought equipment through Gary Shapiro of Vagra Equipment and another equipment salesman named Eli Cohen.  (Alexander Dep. 14).  Shapiro, however, testified that he never sold TMB machines or other TMB products.  (Shapiro Dep. 18, 35).  The record contains no information about Cohen, other than Alexander's testimony that he bought equipment from him.

Traditional Breads made at least 38 purchases of parts from TMB California between 2005 and 2014.  (Pl. SMF, Ex. F, TMB Baking Sales to Traditional Breads).  Gregory Warwick, the current owner of TMB California, asserts that he has searched the company's records, and they reflect those parts sales.  The records do not, however, show a sale of a Euro 2000S to Traditional Breads.  (Warwick Dep. 33).  Warwick testified that because of a 2005 change in accounting software, he could not be sure if the absence of a record of sale was because there

were no sales to Traditional Breads prior to 2005, or because records are missing due to the software changeover.  (Warwick Dep. 31-35).

Michel Suas is the original owner of TMB California.  Suas testified that he did not sell a Euro 2000S to Traditional Breads, Vagra, or Shapiro.  (Suas Dep. 31, 46).  The record does not indicate whether he sold any Euro 2000S machines to or through Eli Cohen.  Suas further testified that if he had made a sale to Traditional Breads, he would have remembered, because the price of the Euro 2000S represented a "big lump of money."  (Suas Dep. 31).  However, Suas also testified that he made "hundreds" of similar type sales.  (Suas Dep. 66).

At the time of the purchase in 2001, TMB California was not the only company distributing the Euro 2000S in the United States.  (Pl. SMF ¶ 12).  The machine was also sold by at least two other entities, Baxter and Pavailler, as well as Electrolux, which made direct sales to customers and maintained an office in New Jersey working with Pavailler.  (Pl. SMF ¶¶ 12, 13).

Regardless of the distributor used, each Euro 2000S made by Electrolux came with an attached label that read "TMB Baking A Global Concept."  (Suas Dep. 25; Warwick Dep. 15).  Suas testified that TMB California would place additional decals on the machines it resold, and that those decals identified TMB California as the seller of the machine.  (Suas Dep. 69-71; Warwick Aff. ¶ 4).  Suas also testified that other distributors, such as Pavailler, would also place their own label on the machines they sold.  (Suas Dep. 27).

The Euro 2000S owned by Traditional Breads (and used by Al-Yaseri) has the Electrolux label on it.  It does not, however, have any other label, sticker, or decal indicating that it was sold by TMB California, Pavailler, or any other distributor.  (Warwick Aff. ¶ 3).

In addition to the machine itself, Traditional Breads also has a Euro 2000S manual.  The origin of that manual is unclear, although it appears to be a copy of the original.  (Alexander

4

Dep. 50).  The cover of the manual contains the name, phone number, and address of TMB California, written in the handwriting of Alercio Hayes, a Traditional Breads employee.  (Hayes Dep. 22-23).[3]  Hayes testified that he wrote the information on the manual as an easy reference for whenever he needed to order new parts for the Euro 2000S.  (Hayes Dep. 23).   Other than Hayes's handwriting, the manual does not identify any other distributor of Euro 2000S machines. (Def. SMF Ex. H).

Suas testified that although a manual would come with each new machine sold, it would often be lost by customers.  (Suas Dep. 37).  As a result, TMB California would frequently make copies of the manual for bakeries who asked.  (Suas Dep. 37).  In addition, starting in 1997, TMB California sent Euro 2000S manuals to bakeries who bought their replacement parts from TMB California in order to encourage those customers to buy additional parts.  (Suas Dep. 39-40).

### C. Procedural History

Al-Yaseri filed the complaint in this matter on June 28, 2013, naming TMB Baking, Inc. (TMB California) and Machines Bertrand as defendants.  The complaint asserts claims for negligent design against Machines Bertrand, and claims for negligence and breach of implead warranties of fitness and merchantability against both defendants.  A default was entered against Machines Bertrand under Fed. R. Civ. P. 55(a) on June 4, 2015.  Defendant TMB Baking, Inc. has now moved for summary judgment on the ground that there is insufficient evidence from which a reasonable jury could conclude that it sold the actual machine that injured Al-Yaseri.

## II. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

---

[3] It appears that Hayes was in charge of maintaining the Euro 2000S at Traditional Breads.

to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

### III.   Analysis

The sole issue presented on summary judgment is whether the record contains sufficient evidence for a reasonable jury to find that TMB California sold or distributed the Euro 2000S machine that injured Al-Yaseri.

Under Massachusetts law, when a plaintiff brings a product liability action premised on negligence or a breach of the implied warranties of merchantability or fitness for a particular purpose, he must show that "[the] defendant manufactured or sold the product that injured [him]." *Fireman's Fund Ins. Co. v. Bradford-White Corp.*, 2014 WL 1515266, at *7 (D. Mass.

Apr. 15, 2014) (implied warranty of merchantability); *see also Garcia v. Kusan, Inc.*, 39 Mass. App. Ct. 322, 329 (1995) (plaintiff must "establish that some item traced to a specific defendant caused his injury" in order to recover on claims of negligence or breach of implied warranties); Mass. Gen. Laws ch. 106 § 2-315 (implied warranty of fitness for a particular purpose created by a "seller" of the goods).

Here, even taking the record evidence in the light most favorable to Al-Yaseri, no reasonable jury could find that the machine that injured him was sold by TMB California, and any such conclusion would necessarily rely on guesswork and speculation.

Suas, the owner of TMB California in 2001, testified affirmatively at his deposition that he did *not* sell the machine to Traditional Breads. There is no paper or electronic record of such a sale, either in the files of TMB California or those of Traditional Breads. Suas testified that TMB California put its own stickers on the machines it sold; the machine at issue has no such sticker. Alexander, the owner of Traditional Breads, testified that he bought all of his equipment from either Gary Shapiro of Vagra Equipment or Eli Cohen. But Shapiro testified that neither he nor Vagra sold TMB Baking machines, and there is no evidence at all as to whether Cohen sold TMB Baking machines.

A jury could choose to discredit some or all of that testimony. It is possible, for example, that the jury could conclude that the memories of Alexander, Suas, and Shapiro are faulty. For example, Alexander could be mistaken, and perhaps he bought the machine directly from TMB California. Suas could be mistaken, and perhaps he sold the machine directly to Traditional Breads, without a sticker. Or Shapiro could be mistaken, and perhaps he sold machines for TMB California.

The problem, however, is that there is no actual *affirmative* evidence that the machine in

question was sold by TMB California. The jury is free to doubt or discredit the testimony of any witnesses it chooses, but that is not enough to establish liability. *See Anderson*, 477 U.S. at 252; *see also, e.g.*, *LaFrenier v. Kinirey*, 550 F.3d 166, 167 (1st Cir. 2008) (affirming district court's grant of summary judgment in civil rights action where plaintiff attacked reliability of defendant police officers but presented no affirmative evidence of her own). Instead, there must be either direct evidence that TMB California sold the machine, or sufficient circumstantial evidence from which such a sale could be reasonably inferred. And such evidence is lacking here. Based on the record, a jury could only speculate as to whether the machine in question was actually sold or distributed by TMB California.

Plaintiff contends that because Traditional Breads purchased its replacement parts from TMB California, it can be inferred that it purchased the machine from TMB California as well. However, there is no evidence as to the reason Traditional Breads chose TMB California as its parts source, nor is there any evidence indicating even that, as a general practice, Traditional Breads frequently purchased the replacement parts for its machines from the same vendor who originally sold the machine needing the parts. Without any actual evidence on which to base that conclusion, a reasonable jury could only speculate or guess that such was the case.

This case is somewhat similar to *Garcia v. Kusan, Inc.*, 39 Mass. App. Ct. 322 (1995), a product-liability case in which the plaintiff could not identify the manufacturer of the product. There, the plaintiff brought a product liability action after a child was injured playing indoor floor hockey using a "Cosom" plastic hockey stick allegedly made by the defendant. *Id.* at 322. The court found that, at best, the evidence tended to show that the hockey stick in question was made by one of two manufacturers who produced Cosom-branded sticks. *Id.* at 329-30. Because there was no further evidence to establish which of the two manufacturers made the stick in

question, the court granted summary judgment in favor of the defendant. *Id.* at 331.

Finally, plaintiff places emphasis on the "cut sheets" containing TMB California's contact information used to sell Euro 2000S machines. The only additional information on those sheets is that they were produced in Europe by the manufacturer, and that they were used to help sell the machines in the United States. There is no evidence connecting the sheets with the Euro 2000S that injured Al-Yaseri, and the Court is at a loss to see how they are relevant in establishing that TMB California sold the machine.

Without evidence sufficient to identify TMB California as the seller of the specific machine that injured Al-Yaseri, any finding by a jury that it did, in fact, sell the machine must necessarily rest only on conjecture. Accordingly, TMB California is entitled to summary judgment in its favor.

## IV.     Conclusion

For the foregoing reasons, defendant TMB Baking, Inc.'s motion for summary judgment is GRANTED.

**So Ordered.**

Dated: February 24, 2016

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge